## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. CR-23-188-SLP |
| v. | ) | |
| | ) | |
| DAN JOHNSON, | ) | |
| | ) | |
| *Defendant*. | ) | |

## <u>O R D E R</u>

Before the Court is Defendant's Motion to Dismiss the Indictment Based on the Unconstitutionality of 18 U.S.C. § 922(g)(1) with Brief in Support [Doc. No. 20], which challenges the constitutionality of § 922(g)(1) as applied to Defendant. *Id*. at 1.[1] The Government has filed its Response [Doc. No. 21], and Defendant has filed his Reply [Doc. No. 26]. Defendant also filed two Notices of Supplemental Authority [Doc. Nos. 28, 29]. The matter is fully briefed and ready for determination.

### I.   <u>Introduction</u>

Defendant is charged in a one-count Indictment with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Specifically, § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition."

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

The Indictment at issue charges Defendant with "knowledge that he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year," and that he "knowingly possessed a firearm, specifically: a Glock, model 17 Gen 4, 9x19mm caliber pistol . . . which was in and affecting interstate or foreign commerce" because it "previously crossed state lines to reach Oklahoma." [Doc. No. 1].

Defendant's Motion challenges the constitutionality of § 922(g)(1) based on *N.Y. State Rifle & Pistol Assn. v. Bruen*, 142 S.Ct. 2111 (2022). Specifically, Defendant asserts § 922(g)(1) is unconstitutional as applied to him under *Bruen* because there is no history and tradition of the Government permanently disarming an individual based on the type of underlying felony at issue. Mot. [Doc. No. 20] at 1–3, 8.[2]

In response, the Government argues: (1) Defendant's challenge to § 922(g)(1) fails under pre–*Bruen* Tenth Circuit precedent which has not been expressly overruled; (2) Defendant is not one of "the people" covered by the plain text of the Second Amendment; and (3) there are sufficient historical analogues to support the constitutionality of § 922(g)(1) in this case. Resp. [Doc. No. 21].

---

[2] Defendant's Motion attaches and relies on documents which are not part of or referenced in the Indictment: primarily public records related to his prior felony conviction. Generally, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (citation omitted). But there is a "recognized exception to this rule—where the extrinsic facts are undisputed and neither party objects." *United States v. Brown*, 164 F.3d 518, 521 n.3 (10th Cir. 1998); *United States v. Hall*, 20 F.3d 1084, 1087–88 (10th Cir. 1994). Here, the materials Defendant attaches are public records, and the Government does not object or dispute their authenticity.

For the reasons that follow, Defendant's Motion is DENIED.  First, the Government is correct that § 922(g)(1) remains constitutional under existing Tenth Circuit precedent. However, to the extent Defendant's claim must be further analyzed under *Bruen*, the Government has met its burden to show § 922(g)(1) is constitutional as applied to Defendant.

II.   **Discussion**

A.   **18 U.S.C. § 922(g)(1) is constitutional under existing Tenth Circuit precedent.**

In its Response to the Motion to Dismiss, the Government asserts that § 922(g)(1) remains constitutional under existing Tenth Circuit precedent, namely *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009) and its progeny.  Resp. [Doc. No. 21] at 2–5.  In his Reply, Defendant argues *McCane* is no longer binding precedent after *Bruen*, and the Court should proceed to *Bruen*'s text and history analysis.  Reply [Doc. No. 26] at 1–3.

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms for self–defense.

After *Heller* and *McDonald*, Courts of Appeals analyzing Second Amendment challenges utilized a two-step framework that combined history with means–end scrutiny to determine the constitutionality of restrictions on Second Amendment rights.  *Bruen*, 142 S. Ct. at 2126.  In *Bruen*, the Court "reiterated" that "*Heller* relied on text and history" and

3

"did not invoke any means–end test such as strict or intermediate scrutiny." *Id*. at 2129. The *Bruen* Court thus rejected use of any means–end scrutiny to address the scope of the Second Amendment's protections as "one step too many." *Id*. at 2126–27.

As the Government points out, the Tenth Circuit has upheld the constitutionality of § 922(g)(1) in multiple pre-*Bruen* decisions without conducting the means–end scrutiny rejected in *Bruen*. *See McCane*, 573 F.3d at 1047; *see also United States v. Gieswein*, 887 F.3d 1054, 1064 (10th Cir. 2018). In *McCane*, the court relied on dictum in *Heller* stating "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *McCane*, 573 F.3d at 1047 (quoting *Heller*, 554 U.S. at 626). The Tenth Circuit reiterated this position in *Gieswein*, rejecting a Second Amendment challenge to § 922(g)(1) without means–end scrutiny because "our precedent [in *McCane*] forecloses this argument." 887 F.3d 1054, 1064 n.6 (10th Cir. 2018); *see also United States v. Molina*, 484 F. App'x 276, 285 (10th Cir. 2012) ("it is evident neither *Heller* nor *McDonald* changes the constitutional status of § 922(g) in its prohibition of firearms by felons.").

Pre–*Bruen*, reliance on *Heller*'s dictum to uphold the constitutionality of § 922(g)(1) has been questioned. *McCane*, 573 F.3d 1047 (Tymkovich, J., concurring) (upholding constitutionality of § 922(g)(1) in light of *Heller* but discussing "possible tension between *Heller*'s dictum and its underlying holding"). To date, post-*Bruen*, the Tenth Circuit has not addressed the constitutionality of § 922(g)(1) in any published opinion, though it did recently acknowledge "[n]either the Supreme Court nor this court has declared § 922(g)(1) unconstitutional," in the context of a motion to enforce an appeal

4

waiver. *United States v. Spellman*, No. 23-1157, 2023 WL 5447364, at *1 (10th Cir. Aug. 24, 2023).

After *Bruen*, multiple district courts within the Tenth Circuit have upheld the constitutionality of § 922(g)(1) based on the precedential value of *McCane* in both facial and as–applied challenges. *See United States v. Webb*, No. 4:22-CR-00075-DN-PK, 2023 WL 4977932, at *2–3 (D. Utah Aug. 3, 2023) ("*McCane* and its progeny remai[n] the controlling law and precedent in the Tenth Circuit and *Bruen* did nothing to disrupt *McCane* or conclude that 18 U.S.C. 922(g)(1) is unconstitutional."); *see also United States v. Brewer*, No. CR-23-230-PRW, 2023 WL 5827056, at *1 (W.D. Okla. Sept. 8, 2023); *United States v. Nakedhead*, No. 23-CR-109-JFH, 2023 WL 5277905, at *2 (E.D. Okla. Aug. 16, 2023); *United States v. Carloss*, No. 23-CR-086-JFH, 2023 WL 5152623, at *2 (E.D. Okla. Aug. 10, 2023); *United States v. Baker*, No. 2:20-CR-00301-DBB, 2022 WL 16855423, at *3–4 (D. Utah Nov. 10, 2022); *United States v. Carpenter*, No. 1:21-CR-00086-DBB, 2022 WL 16855533, at *2–4 (D. Utah Nov. 10, 2022).

Other courts within the Tenth Circuit have proceeded to analyze the constitutionality of § 922(g)(1) under *Bruen*'s framework. *See, e.g.*, *United States v. Jones*, CR-22-00376-JD [Doc. No. 59] at 3–4 (W.D. Okla. Dec. 23, 2022) (discussing *McCane* and its progeny before proceeding to the analysis set forth in *Bruen*); *United States v. Coombes*, 629 F. Supp. 3d 1149, 1161 (N.D. Okla. 2022) (analyzing facial and as–applied challenges to § 922(g)(1) under *Bruen*'s framework without substantively discussing *McCane*); *United States v. Mayfield*, No. 22-CR-00242-GKF, 2023 WL 2386322, at *3–4 (N.D. Okla. Mar. 6, 2023) (analyzing a facial challenge to § 922(g)(1) without discussion of *McCane*);

*United States v. Forbis*, 23-CR-133-GKF [Doc. No. 37] (N.D. Okla. Aug. 17, 2023) (finding § 922(g)(1) facially constitutional under *Bruen*, but unconstitutional as applied to a defendant previously convicted of drug possession felonies).

As for the Circuit Courts to have addressed the issue, the Fifth and Seventh Circuits have rejected reliance on pre-*Bruen* decisions.  *See United States v. Rahimi*, 61 F.4th 443, 450–51 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023) ("*Bruen* clearly 'fundamentally change[d]' our analysis of laws that implicate the Second Amendment . . . rendering our prior precedent obsolete." (citation omitted)); *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) (rejecting the government's invitation to avoid *Bruen* analysis by invoking *Heller*'s dicta, stating "[n]othing allows us to sidestep *Bruen* in the way the government invites.").  The Eighth Circuit, conversely, has upheld the constitutionality of § 922(g)(1), finding that *Bruen* "did not disturb" or "cast doubt on the prohibitions" identified in *Heller*, *i.e.*, "longstanding prohibitions on the possession of firearms by felons" and given the "assurances by the Supreme Court, and the history that supports them . . . there is no need for felony-by-felony litigation regarding the constitutionality of §922(g)(1)." *United States v. Jackson*, 69 F.4th 495, 501–02 (8th Cir. 2023).

As set forth, in the Tenth Circuit, *McCane* continues to be binding precedent because it has not been expressly overruled, and it is based on dictum from *Heller* which has been consistently underscored, even in *Bruen* itself.[3]  Thus, denial of Defendant's

---

[3] The Supreme Court underscored *Heller*'s dictum in *McDonald*, stating:

We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and

Motion on this basis is proper.  To the extent, however, that *McCane* no longer governs the analysis after *Bruen*'s "more explicit" instruction, the Court proceeds to address Defendant's § 922(g)(1) challenge under the standard articulated in *Bruen*.

### B.    *Bruen* Analysis

In *Bruen*, the Court held:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id*. at 2129-30.  Pursuant to this constitutional standard, the Court must assess: (1) whether the plain text of the Second Amendment covers the conduct at issue; and, if so (2) whether the Government can establish that the challenged regulation is consistent with the historical

---

the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  We repeat those assurances here.

*McDonald*, 561 U.S. at 786 (citations omitted).  The Court in *Heller* also described the prohibition on possession of firearms for individuals convicted of felonies as "presumptively lawful." *Heller*, 554 U.S. at 626–27 n.26.  The majority in *Bruen* expressly described the decision as "consistent with *Heller* and *McDonald*," and reaffirmed the right is "subject to certain reasonable, well-defined restrictions." 142 S. Ct. at 2122, 2156; *see also id*. at 2157 (Alito, J., concurring) (explaining *Bruen* did not disturb anything the Court said in *Heller* or *McDonald* about restrictions that may be imposed on possession of firearms); *id*. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting the dictum in *Heller*); *id*. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.").  The concurrences and dissent in *Bruen* provide additional support for the conclusion that *Bruen* did not alter *Heller*, the Tenth Circuit precedent based on *Heller*, or the constitutional status of § 922(g)(1).

tradition of firearms regulation in the United States.[4]

### i. The Second Amendment's plain text covers Defendant's alleged conduct in this case.

Here, the parties devote substantial attention to the first prong of the *Bruen* analysis. *See* Mot. [Doc. No. 20] at 3–8; *see also* Resp. [Doc. No. 21] at 5–11. Defendant asserts the plain text of the Second Amendment applies to his conduct because he is one of "the people" to whom the Second Amendment right applies. *See* Mot. [Doc. No. 20] at 3–8. The Government asserts the plain text of the Second Amendment only applies to "ordinary, law–abiding" citizens, and Defendant's status as a felon removes him from that protected category of individuals. *See* Resp. [Doc. No. 21] at 5–11.

In *Heller*, the Court reasoned that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. Accordingly, *Heller* established "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581.

As the Government points out, the Court in *Heller* proceeded to reference the right to bear arms for "law-abiding citizens" numerous times—most notably describing "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."

---

[4] The Court notes at the outset that the Third and Eighth Circuits are split on the constitutionality of § 922(g)(1) post–*Bruen*. *Compare Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (finding § 922(g)(1) unconstitutional as applied to a defendant previously convicted of falsifying an application for food stamps); *with United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (finding § 922(g)(1) constitutional as applied to a defendant previously convicted twice of distribution of a controlled substance).

*Heller*, 554 U.S. at 625, 635.  The Court repeated this language even more times in *Bruen*.

*Bruen*, 142 S.Ct. at 2122, 2125, 2131, 2133-34, 2150, 2156 (summarizing *Heller* as

providing the "right of an ordinary, law-abiding citizen to possess a handgun in the home

for self-defense.").  The dissent in *Heller* noted the tension between its broad reading of

"the people" to include "all members of the political community, not an unspecified subset"

and its subsequent references to "law-abiding, responsible citizens." *Heller*, 554 U.S. at

644 (Stevens, J. dissenting, joined by Souter, J., Ginsburg, J., and Breyer, J.) (describing

these as "conflicting pronouncements").[5]

Post–*Bruen*, there are "dueling interpretations by district courts nationwide on the

question of whether 'the people' should be read more broadly, such as in the context of the

First and Fourth Amendments, or narrowly, such as in the case of voting rights." *Hill*, 2022

WL 17069855, at *3.  Based on dicta in *Heller*, *McDonald*, and *Bruen*, some courts have

found § 922(g)(1) constitutional because the Second Amendment only covers "law–

abiding citizens."  *See, e.g.*, *United States v. Ingram*, 623 F. Supp. 3d 660, 664 (D.S.C.

Aug. 25, 2022) (upholding the constitutionality of § 922(g)(1) without proceeding to

---

[5] The Government argues *Heller* "ultimately concluded that the Second Amendment excluded felons and the mentally ill." Resp. [Doc. No. 21] at 6.  But *Heller* did not involve any subsection of 18 U.S.C. § 922(g), nor did it expressly decide whether a person convicted of a felony or a person suffering from mental illness could qualify as one of "the people" under the Second Amendment.  *See United States v. Hill*, No. CR H-22-249, 2022 WL 17069855, at *3 (S.D. Tex. Nov. 17, 2022) ("While *Heller* and *Bruen* repeatedly discussed the Second Amendment in the context of law–abiding citizens, neither opinions clarified which groups qualified as 'the people,' as that term appears in the Second Amendment."); *United States v. Goins*, No. 5:22-cr-00091, 2022 WL 17836677, *5 (E.D. Ky. Dec. 21, 2022) (recognizing "[t]he issue of whether a non-law-abiding citizen qualifies for Second Amendment protection was not before the Court.").

historical analysis because "the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment" "[b]y distinguishing non-law-abiding citizens from law-abiding ones" and *Bruen* referenced "law abiding citizens" throughout the opinion).

However, federal district courts in this judicial district to address the issue have consistently found the plain text of the Second Amendment covers the various types of conduct regulated by § 922(g)(1).  *See, e.g., Jones*, CR-22-00376-JD [Doc. No. 59] at 5–9 (finding § 922(g)(1) is covered by the plain text of the Second Amendment); *Coombes*, 629 F. Supp. 3d at 1156 (same); *United States v. Gray*, No. 22-cr-00247-CNS, 2022 WL 16855696, at *2–3 (D. Colo. Nov. 10, 2022) (same); *United States v. Carrero*, 635 F. Supp. 3d 1210, 1212 (D. Utah 2022) (same).

Here, the Court finds no basis in the record to depart from the well-reasoned opinions of its sister courts in this judicial district.  As in *Jones*, the Government does not offer any textually based argument to challenge the "strong presumption" that Defendant is covered by the plain text of the Second Amendment.  *See Jones*, CR-22-00376-JD [Doc. No. 59] at 8.  The Government also does not argue any *conduct* of the Defendant is outside the scope of the Second Amendment.  *See United States v. Kays*, 624 F. Supp. 3d 1262, 1265 (W.D. Okla. 2022) (rejecting an argument that the Second Amendment does not apply to individuals under indictment because "[t]his argument ignores the Supreme Court's emphasis on an individual's conduct, rather than status, to decide if Second Amendment protection exists.").  Here, Defendant's alleged conduct—*i.e.*, possession of a handgun— is covered by the plain text of the Second Amendment.  *See Gray*, 2022 WL 16855696 at *2 (finding the defendant was covered by the Second Amendment's plain text where

"[t]here is no dispute that the . . . 9mm handgun constitutes an 'arm' within the Second Amendment's protection.").  Thus, the Court concludes Defendant's alleged conduct is covered by the plain text of the Second Amendment.

> ii.    **The Government has met its burden to show Section 922(g)(1) is consistent with the Second Amendment's historical understanding as applied to Defendant.**

Defendant's Motion brings an as–applied challenge primarily focused on his prior felony conviction, asserting there is "no 'history and tradition' of disarming for life one who is convicted of mere drug possession." Mot. [Doc. No. 20] at 1–3, 8; Reply [Doc. No. 26] at 4, 8–9.  In Response, the Government relies on historical analogues commonly referenced in cases involving § 922(g)(1) post–*Bruen*: (1) British and early American laws providing for forfeiture of property and imposition of the death penalty for felonies (even nonviolent ones); (2) British and colonial laws categorically disarming certain groups of people such as Catholics; and (3) and Revolutionary War–era laws disarming loyalists. Resp. [Doc. No. 21] at 13–14.

Defendant's historical arguments are found in his Reply, where Defendant argues *general* distinctions between § 922(g)(1) and the historical comparisons offered by the Government, with only a few references to his circumstances or his particular felony conviction.  *See* Reply [Doc. No. 26] at 4–11.  Aside from pointing out Defendant served his prior felony sentence and "remained a free individual for years after his release" (which would be true for many defendants in such cases), *id.* at 4, Defendant's only substantive argument regarding his prior felony implies that he is not "dangerous" simply for possessing a controlled substance.  *Id.* at 8–9.  Each of these arguments are addressed

11

below, but the Court notes at the outset that Defendant provides few arguments specific to his as–applied challenge.[6]

In *Bruen*, the Supreme Court instructed that the historical analogical reasoning it requires "is neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 142 S.Ct. at 2133.  Courts "should not 'uphold every modern law that remotely resembles a historical analogue,' because doing so risks endorsing outliers that our ancestors would never have accepted." *Id*. (cleaned up).  On the other hand, the Government need only identify "a well-established and representative historical *analogue*, not a historical *twin*." *Id*.  Thus, a modern-day regulation need not be "a dead ringer for historical precursors." *Id*.

*Bruen* does not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment." *Id*. at 2132-33.  But it does instruct that two "central considerations" guide the analysis: "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id*. at 2133.

---

[6] In *United States v. Wagoner*, the court declined to consider an as–applied challenge to § 922(g)(1) where the defendant's arguments centered on generic historical arguments more like a facial challenge which would "be true in many, if not most, prosecutions under § 922(g)(1)." No. 4:20-CR-00018, 2022 WL 17418000, at *4–5 (W.D. Va. Dec. 5, 2022).  The court also reasoned that after *Bruen*, "it appears that the constitutionality of a firearm regulation should rise and fall only on whether the challenged law is facially consistent with the Nation's historical tradition of firearm regulation—without regard to the circumstances of, or burdens placed upon, any particular defendant." *Id*. at *4.  Here, the Court considers the few arguments raised by Defendant regarding his circumstances but notes that his challenge overall is argued more like a facial challenge.  Thus, other cases involving facial challenges are instructive.

First, Defendant asserts § 922(g)(1) is unconstitutional as applied to him because there is "no 'history and tradition' of disarming for life one who is convicted of mere drug possession." Mot. [Doc. No. 20] at 8. But *Bruen* made clear the Government does not have to provide a historical "dead ringer" or "twin", and requiring a historical example of a person being disarmed for life based on the precisely the same crime would do exactly that. *See Bruen*, 142 S.Ct. at 2133; *see also United States v. Hughes*, No. 2:22-CR-00640-DCN-1, 2023 WL 4205226, at *12 (D.S.C. June 27, 2023) ("The suggestion that only persons convicted of crimes with identical historical analogues may be subject to gun restrictions leads to inappropriately anachronistic results."); *Range*, 69 F.4th at 129 (Krause, J. dissenting) ("how else would one describe the kind of analogue [Defendant] demands—a Founding-era statute that imposed the 'particular' restriction for the same length of time on the same group of people as a modern law—if not as a contemporary regulation's 'dead ringer' and 'historical twin'?").

To the extent Defendant contends his prior felony was not a dangerous crime, numerous other courts have found § 922(g)(1) constitutional in as–applied challenges involving nonviolent felonies, some of which relied on the exact same historical analogues. *See, e.g., Jackson*, 69 F.4th at 505 (finding § 922(g)(1) constitutional as applied to a defendant previously convicted of distribution of a controlled substance in part because "[n]ot all persons disarmed under historical precedents—not all Protestants or Catholics in England . . . not all Catholics in Maryland, not all early Americans who declined to swear an oath of loyalty—were violent or dangerous persons."); *United States v. Rice*, No. 3:22-CR-36 JD, 2023 WL 2560836, at *8–10 (N.D. Ind. Mar. 17, 2023) (finding § 922(g)(1)

13

constitutional as applied to a defendant previously convicted of a nonviolent felony based in part on the capital punishment and forfeiture analogues); *United States v. Willis*, No. 22-CR-00186-RMR, 2022 WL 17177470, at *2 (D. Colo. Nov. 23, 2022) (rejecting an as–applied challenge to § 922(g)(1) in the context of a non–violent felony because "Founding-era precedent exists for disarming nonviolent individuals."); *United States v. Melendrez-Machado*, No. EP-22-CR-00634-FM, 2023 WL 4003508, at *10 (W.D. Tex. June 14, 2023) ("Both historical loyalty laws and *Heller* support the conclusion that felons may be disarmed, irrespective of whether their underlying crimes were violent."); *cf. Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) (collecting similar historical sources and concluding "the public in the founding era understood that the right to bear arms could exclude at least some nonviolent persons.").[7]

Here, like the cases above, the Government has met its burden to provide a "well–established and representative historical analogue" to § 922(g)(1) as applied to a nonviolent felony. First, the historical examples of capital punishment and forfeiture of property as

---

[7] Of course, there is disagreement among the Circuits regarding the extent to which the historical record supports disarming non-violent offenders. *Compare Range*, 69 F.4th at 105 (holding § 922(g)(1) unconstitutional as applied to a nonviolent offender, arguing that the capital punishment applied to some nonviolent offenders does not prove that other nonviolent offenders could be disarmed); *with Jackson*, 69 F.4th at 502–04 (recognizing not all individuals disarmed in Britain and early America were violent or dangerous, and holding § 922(g)(1) constitutional as–applied to a defendant previously convicted of distribution of controlled substances); *Atkinson*, 70 F.4th at 1023 (questioning the distinction with respect to the "dangerousness" of felons). The Court finds *Jackson*'s reasoning most persuasive in the present as–applied challenge because the underlying felony at issue in this case is very similar to the one in *Jackson*, and the historical examples offered by the Government are the same. *See* 70 F.4th at 498, 501–05.

14

punishments for felonies are "relevantly similar," although obviously not identical.[8]  Most directly, forfeiture of an entire estate for commission of a felony would necessarily include firearms, which clearly burdens Second Amendment rights.  *See Rice*, 2023 WL 2560836, at *10.  As to this case, the fact that these historical felony punishments applied to some nonviolent felonies such as forgery and horse theft leaves little doubt § 922(g)(1) may be applied to Defendant consistent with our Nation's history and tradition, even if his prior felony was nonviolent.

In his Reply, Defendant argues based on the Third Circuit decision in *Range* that historical laws regarding forfeiture are not relevantly similar because he would have been able to repurchase arms after serving a felony sentence and reintegrating in society.  Reply [Doc. No. 26] at 4–5.  But *Range* did not clearly state as much: the majority merely referenced a comment from the dissent about repurchasing arms, 69 F.4th at 105, which stated in full:

> Individuals who committed less serious crimes also lost their firearms on a temporary, *if not permanent*, basis. Where state legislatures stipulated that certain offenses were not punishable by death or life imprisonment, but rather resulted in forfeiture, the offender was stripped of his then-existing estate, including any firearms, and only upon successfully serving of his sentence and reintegrating into society could he presumably repurchase arms.

---

[8] In his Reply, Defendant argues the fact that "Founding–era governments punished some nonviolent crimes with death does not suggest that the particular (and distinct) punishment at issue—lifetime disarmament—is rooted in our Nation's history and tradition." [Doc. No. 26] at 4 (citing *Range*, 69 F.4th at 104).  This argument wholly ignores the forfeiture punishment discussed by the Government, which would necessarily involve disarmament, and the very case Defendant cites states that some of those forfeitures were permanent.  *See* discussion of the dissent in *Range* and note 9, infra.  Capital punishment, on the other hand, would only incidentally burden Second Amendment rights, but the Court need not consider capital punishment by itself because it finds forfeiture is a sufficient historical analogue.

*See Range*, 69 F.4th at 127–28 (Krause, J. dissenting) (emphasis added).  Read in context, this discussion acknowledges an individual who committed a nonviolent crime in early America could indeed lose their firearm permanently, and the Court finds no historical source in this case or in *Range* to the contrary.[9]  Finally, as the dissent points out in *Range*, 18 U.S.C. § 921(a)(20) provides that a conviction which has been expunged, set aside, or pardoned is not subject to § 922(g)(1)'s ban, and therefore provides relevant similarity to Founding–era laws to the extent they allowed an individual to repurchase arms after serving a felony sentence in limited circumstances.  *Id*. at 128.

Moreover, the categorical bans on firearm possession applicable to groups of people such as Catholics and loyalists are "relevantly similar" regulations to § 922(g)(1): each imposes a status–based ban which does not distinguish between violent or dangerous people and those who are not.  Resp. [Doc. No. 21] at 14 (citing early laws from Pennsylvania, Maryland, Virginia, North Carolina, and Massachusetts).  More specifically, § 922(g)(1) applies to Defendant even if his prior felony was nonviolent or evinces no level of dangerousness, just like an individual Catholic or loyalist was historically banned from possessing firearms even though they did not individually demonstrate a risk of dangerousness.  As such, the relevant burden on Defendant (disarmament regardless of his

---

[9] The dissent in *Range* does not cite a case or historical source for the final observation about repurchasing arms after a convicted felon served his or her sentence, and the sources it previously cites do not clearly provide an individual could repurchase arms.  *See id.*  To the extent a historical source provides otherwise, it is not presently before the Court.

propensity for violence) is comparable to the burden on nonviolent individuals within groups categorically banned from having firearms historically.

Like other courts analyzing these commonly cited analogues, this Court "emphatically reject[s] these bigoted and unconstitutional laws, as well as their premise that one's race or religion correlates with disrespect for the law"—the Court only considers these examples because they were raised by the Government and they "demonstrate the tradition of categorical, status-based disarmaments." *Range*, 69 F.4th at 122 n.50 (Krause, J. dissenting). With that recognition in mind, the *purported* justifications behind these historical laws are comparable to the modern justification for § 922(g)(1): "[l]egislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." *Jackson*, 69 F.4th at 504. Similarly, § 922(g)(1) was passed in an effort to "curb 'lawlessness and violent crime'" and "keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Id*. at 504–05 (citations omitted)). Finally, even "if dangerousness is considered the traditional *sine qua non* for dispossession, then history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." *Id*.[10]

---

[10] Defendant is correct that the Government does not argue comparable justifications behind these categorical bans and § 922(g)(1). But, as demonstrated by this discussion, other courts have found the historical justifications for these laws are comparable to the modern justifications for § 922(g)(1). *See id.*; *see also Rice*, 2023 WL 256836 at *9 (finding the forfeiture and capital punishment analogues imposed a comparable burden and had comparable justifications to § 922(g)(1)).

As final observations, the Court notes the weight of authority across the country has found § 922(g)(1) constitutional under the various analytical paths discussed herein. *See United States v. Vasquez*, No. 8:21-CR-0062-CEH-SPF, 2023 WL 4935936, at *4 (M.D. Fla. July 10, 2023), *report and recommendation adopted*, No. 8:21-CR-62-CEH-SPF, 2023 WL 4931898 (M.D. Fla. Aug. 2, 2023) (collecting cases and noting "almost every federal court that has considered the constitutionality of § 922(g)(1) since *Bruen* has upheld the statute."); *United States v. Harrison*, No. 3:22-CR-455, 2023 WL 4670957, at *6 (N.D.N.Y. July 20, 2023) (noting "about 140 district courts" have found § 922(g)(1) constitutional after *Bruen*).

The same is true within the Tenth Circuit, where district courts have unanimously upheld the facial constitutionality of § 922(g)(1) post-*Bruen*.[11]  Four other district courts have upheld the constitutionality of 922(g)(1) in the context of as–applied challenges, albeit for varying reasons. *Compare Willis*, 2022 WL 17177470 at *2–3 (rejecting an as applied challenge to § 922(g)(1) in the context of a prior non-violent felony because "Founding-era precedent exists for disarming nonviolent individuals."); *with Coombes*, 629 F. Supp. 3d at 1156–1163 (rejecting facial and as–applied challenges to § 922(g)(1) after *Bruen*

---

[11] *See, e.g., Jones*, CR-22-00376-JD [Doc. No. 59] at 9–12 (rejecting a facial challenge to § 922(g)(1) after *Bruen*); *Gray*, 2022 WL 16855696, at *2–3 (same); *Carloss*, 2023 WL 5152623, at *2 (same); *Carrero*, 635 F. Supp. 3d at 1212–15 (same); *Webb*, 2023 WL 4977932, at *3 (same); *Carpenter*, 2022 WL 16855533, at *1–4 (same); *Mayfield*, 2023 WL 2386322, at *3–4 (same); *United States v. Teerlink*, No. 2:22-CR-0024-TS, 2022 WL 17093425, at *1 (D. Utah Nov. 21, 2022) (same); *United States v. Campbell*, No. CR-22-00138-001-HE, 2022 WL 17492255, at *1 (W.D. Okla. Sept. 27, 2022) (same); *Forbis*, 23-CR-133-GKF [Doc. No. 37] at 7–12 (upholding the facial constitutionality of § 922(g)(1), but finding it unconstitutional as applied).

based on a finding that the prior felony conviction for burglary was considered a violent crime, "assuming § 922(g)(1) is constitutionally limited to violent crimes"); *Baker*, 2022 WL 16855423, at *1, 3–4 (rejecting an as applied challenge to § 922(g)(1) based on the precedential value of *McCane* in the context of a prior nonviolent felony); *Brewer*, 2023 WL 5827056, at *1 (rejecting facial and as applied challenges to § 922(g)(1) based on the precedential value of *McCane* in the context of a prior violent felony).[12]   The Court finds the collective wisdom of these decisions persuasive, especially where most of the parties' arguments overlap with those made in the context of facial challenges.   *See* note 6 and accompanying discussion, supra.

In sum, the Court concludes that the Government has sufficiently demonstrated historical analogues for disarming individuals like Defendant and, therefore, the Court rejects Defendant's as–applied challenge to § 922(g)(1).

---

[12] The only current exception within the Tenth Circuit is *Forbis*, which recently found § 922(g)(1) constitutional on its face, but unconstitutional as applied to a defendant previously convicted of drug possession felonies and larceny of an automobile, in part because "[t]he government presents no evidence that any prior conviction listed in the Indictment shows that Mr. Forbis is a danger to the public if armed."   *See* 23-CR-133-GKF [Doc. No. 37] at 7–12.   But the issue was presented differently there: the Government's Response to the as–applied challenge hardly addressed historical comparisons, instead arguing the defendant's prior convictions suggested he would pose a danger to public safety if permitted to possess a firearm.   *See id.* at 10-11; *see also* United States' Resp., 23-CR-133-GKF [Doc. No. 29] at 12–15.   The court pointed out "[t]he government's arguments regarding the dangerousness of drunk drivers and drug users do not address the relevant inquiry required by *Bruen*."   *Id.* at 10–11.   Here, unlike in *Forbis*, the Government's argument under *Bruen*'s second prong correctly focuses on history rather than any characterization of Defendant's prior felony.   Resp. [Doc. No. 21] at 12–15.

19

### III. <u>Conclusion</u>

The Court rejects Defendant's challenge to § 922(g)(1).  The Court finds § 922(g)(1) is constitutional as applied to Defendant.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss the Indictment Based on the Unconstitutionality of 18 U.S.C. § 922(g)(1) with Brief in Support [Doc. No. 20] is DENIED.

IT IS SO ORDERED this 15th day of September, 2023.

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**